FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

## Jan 21, 2026

SEAN F. McAVOY, CLERK

# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| MARIO L.,[1] | No. 4:24-cv-05016-RHW |
| Plaintiff, | **ORDER MODIFYING REPORT AND RECOMMENDATION; ORDER OF REMAND AND DIRECTING ENTRY OF JUDGMENT IN FAVOR OF PLAINTIFF** |
| vs. | |
| FRANK BISIGNANO, COMMISSIONER OF SOCIAL SECURITY, | |
| Defendant. | **ECF Nos. 7, 12, 15, 16** |

Before the Court is the Report and Recommendation issued by Magistrate Judge Alexander C. Ekstrom, ECF No. 15, recommending the decision of the Commissioner is affirmed.  Plaintiff filed objections to the Report and Recommendation.  ECF NO. 16.  Defendant did not timely respond to the objections.  The Court subsequently ordered Defendant to respond and to:

> explain its lack of response and state whether it concedes error in the ALJ's analysis or address all of Plaintiff's objections, with particular focus on

---

[1] To protect the privacy of plaintiffs in social security cases, the undersigned identifies them by only their first names and the initial of their last names.  *See* LCivR 5.2(c).

ORDER - 1

1  whether the ALJ's reliance on improvement with treatment and activities of
2  daily living were clear and convincing reasons to discount Plaintiff's
   symptom claims.

3  ECF No. 17 at 2. Defendant timely filed a response in accordance with the Court's

4  Order, ECF No. 18, stating Defendant did not intend to concede error, but did not

5  initially respond "in the belief the Objection had no merit." ECF No. 18 at 2.

6  Plaintiff was given the opportunity to file a reply, but no reply was filed.

7       Under the Federal Magistrates Act (Act), the Court may "accept, reject, or

8  modify, in whole or in part, the findings or recommendations made by the

9  magistrate." 28 U.S.C. § 636(b)(1). If a party objects to a magistrate judge's

10 findings and recommendations, "the court shall make a de novo determination of

11 those portions of the report or specified proposed findings or recommendations to

12 which objection is made." *Id*.; Fed. R. Civ. P. 72(b)(3). Nevertheless, objections

13 to a magistrate judge's report and recommendation are not an appropriate vehicle

14 to rehash or re-litigate the points considered and resolved by the magistrate judge.

15 *See, e.g., El Papel LLC v. Inslee*, No. 2:20-cv-01323-RAJ-JRC, 2021 WL 71678,

16 at *2 (W.D. Wash. Jan. 8, 2021) ("Because the Court finds that nearly all

17 objections are merely a rehash of arguments already raised and decided upon by

18 the Magistrate Judge, the Court will not address each objection here."); *Aslanyan v.*

19 *Herzog*, No. C14-0511JLR, 2014 WL 7272437, at *1 (W.D. Wash. Dec. 17, 2014)

20 (rejecting a challenge to a magistrate judge's report and recommendations when

"all of [plaintiff's] objections simply rehash arguments contained in his amended opening memorandum or in his reply memorandum").

Having conducted a de novo review of those portions of the Report and Recommendation to which objections have been made, the Court adopts in part and modifies in part the Report and Recommendation, reverses the decision of the Commissioner, and remands this case to the Commissioner for further administrative proceedings consistent with this Order.

**A. Symptom Claims**

Plaintiff objects to the recommendation to affirm the ALJ's discounting of his symptom claims. ECF No. 16 at 9. An ALJ engages in a two-step analysis when evaluating a claimant's testimony regarding subjective pain or symptoms. *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035-36 (9th Cir. 2007). First, the ALJ must determine whether there is "objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." *Id.* (internal quotation marks omitted). "The claimant is not required to show that [the claimant's] impairment could reasonably be expected to cause the severity of the symptom [the claimant] has alleged; [the claimant] need only show that it could reasonably have caused some degree of the symptom." *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009).

Second, "[i]f the claimant meets the first test and there is no evidence of

1   malingering, the ALJ can only reject the claimant's testimony about the severity of

2   the symptoms if [the ALJ] gives 'specific, clear and convincing reasons' for the

3   rejection." *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014) (internal

4   citations and quotations omitted).  "General findings are insufficient; rather, the

5   ALJ must identify what testimony is not credible and what evidence undermines

6   the claimant's complaints." *Id*. (quoting *Lester v. Chater*, 81 F.3d 821, 834 (9th

7   Cir. 1995)); *Thomas v. Barnhart*, 278 F.3d 947, 958 (9th Cir. 2002) ("[T]he ALJ

8   must make a credibility determination with findings sufficiently specific to permit

9   the court to conclude that the ALJ did not arbitrarily discredit claimant's

10  testimony.").  "The clear and convincing [evidence] standard is the most

11  demanding required in Social Security cases." *Garrison v. Colvin*, 759 F.3d 995,

12  1015 (9th Cir. 2014) (quoting *Moore v. Comm'r of Soc. Sec. Admin*., 278 F.3d 920,

13  924 (9th Cir. 2002)).

14      *1. ALJ's Misstatement of the Applicable Standard*

15      Plaintiff contends the ALJ "repeatedly held the claimant to an improper

16  standard" in concluding that the evidence does not establish that Plaintiff's mental

17  symptoms would prevent him from "performing all work-related activities."  *See*

18  Tr. 23, 25, 26.  Plaintiff claims this error "poisoned the entire credibility analysis."

19  ECF No. 16 at 9.  Though the ALJ's statement is incorrect, the Court concludes no

20  reasonable reading of the decision leads to the conclusion that the ALJ applied an

1  improper standard for disability in evaluating Plaintiff's symptom claims.  The

2  ALJ's decision begins with a recitation of the correct legal standard and notes that

3  the residual functional capacity (RFC) reflects "the most the claimant can do on a

4  sustained basis."  Tr. 24; *see Vega v. Comm'r of Soc. Sec.*, 358 F. App'x. 372, 376

5  (3d Cir. 2009) (rejecting a request for remand based on a similar misstatement of

6  the applicable standard where the ALJ nonetheless followed the proper five-step

7  procedure in his disability analysis).

8    2.  *Receipt of Unemployment Benefits, Inconsistent Statements and*
          *Conservative Treatment*

9       The ALJ gave six reasons to discount Plaintiff's symptom claims.  The

10 Report and Recommendation concludes three of the six reasons were supported by

11 the record, and three other reasons—namely, the receipt of unemployment benefits,

12 inconsistent statements, and conservative treatment—were not.  The Court agrees

13 with the reasoning set forth in the Report and Recommendation as to the ALJ's

14 reliance on the receipt of unemployment benefits, inconsistent statements, and

15 conservative treatment, and concludes these were erroneous reasons for

16 discounting Plaintiff's symptom claims.  As they are explained in the Report and

17 Recommendation, the Court only briefly summarizes and supplements the

18 explanation here.  First, the ALJ erroneously discounted Plaintiff's symptom

19 claims based on Plaintiff's receipt of unemployment benefits for four quarters.  *See*

20 ECF No. 15 at 16-17.  As the record does not establish whether Plaintiff held

himself out as available for full-time or part-time work, receipt of unemployment benefits does not undermine the alleged inability to work fulltime. *See Carmickle v. Comm'r of Soc. Sec. Admin*, 533 F.3d 1155, 1161-63 (9th Cir. 2008).

Second, the ALJ improperly found that Plaintiff's inconsistent reports of persistent sleep disturbance and hallucinations "show a consistent lack of symptomology over time." Tr. 27; ECF No 15 at 16. The ALJ found that treatment notes wherein Plaintiff reported hallucinations and sleep disturbance were inconsistent with other treatment notes wherein Plaintiff did not report experiencing these symptoms. In the mental health context, it is error to reject testimony "merely because symptoms wax and wane in the course of treatment." *Garrison*, 759 F.3d 995, 1017 (9th Cir. 2014), citing *Holohan v. Massanari*, 246 F.3d 1195, 1205 (9th Cir. 2001). Moreover, the record must be read in context of the overall diagnostic picture. Notably, the psychological expert, Nicole Martinez, Psy.D., testified that the way Plaintiff's mental health symptoms "are not consistently reported on an ongoing basis" and occur most often when he is fatigued, "align . . . and actually very much sound like narcolepsy II with cataplexy." Tr. 51. She testified that "he needs to have a sleep evaluation," Tr. 56, because it was her opinion that Plaintiff's symptoms were not "traditional" symptoms of bipolar disorder or depression. Tr. 51. Contrary to a lack of symptomology, Plaintiff's symptoms of hallucinations, sleep disturbances,

auditory and visual disturbances, and vivid dreams were present throughout the longitudinal treatment history in chronic, though perhaps more irregular, fashion. *See* Tr. 476, 498, 508 (hallucinations but not as negative as they were in the past); 457 (hears voices or footsteps, sometimes sees a little girl); Tr. 768 ("flashes" of hallucinations, but he tries to "catch himself"); Tr. 776 (hallucinations); Tr. 722 (hallucinations); Tr. 758 (broken sleep and sees occasional shadows); Tr. 759 (intense realistic dreams).

Third, the ALJ erroneously characterized Plaintiff's treatment with antipsychotic medication and counseling as "routine and conservative," and then concluded there was "no evidence that the claimant required or was referred for inpatient or partial psychiatric hospitalization or other form of more intensive mental health intervention." Tr. 22. The record shows Plaintiff attempted suicide twice and received crisis mental health care at Lourdes Health Transitions crisis triage facility. *See, e.g.*, Tr. 441 (reporting Plaintiff spent four days at Transitions after triage to a Crisis Response Unit because he was suicidal); Tr. 63, 456, 483, 500, 683.

### 3. Activities of Daily Living

The ALJ also relied on Plaintiff's reported daily activities in discounting Plaintiff's symptom claims. The Report and Recommendation concludes that the ALJ's finding is supported by substantial evidence. The Court disagrees and

concludes the ALJ erred in discounting Plaintiff's symptom testimony because of his activities of daily living.

An ALJ may reject a plaintiff's subjective symptom testimony if it is inconsistent with the plaintiff's activities of daily living. *Tommasetti v. Astrue*, 533 F.3d 1935, 1039 (9th Cir. 2008). Specifically, in discounting a plaintiff's claims, an ALJ properly may rely on activities of daily living: (1) when daily activities demonstrate the plaintiff has transferable work skills, and (2) when daily activities contradict the plaintiff's testimony as to the degree of functional limitation. *Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007).

Here, the ALJ described Plaintiff's reported activities of daily living as follows:

> [Plaintiff] can go out independently, drive an automobile, go shopping in stores, manage finances, follow instructions, spend time with friends and family, and engage in hobbies such as reading, listening to audio books, and watching television. [Plaintiff] reported that he spends most of his days trying to get connected with social services and associated resources, and testified he went camping with friends and family in June 2021. The record also shows that the claimant visited the ER in July 2021 with complaints of neck and back pain after jumping from a moving boat.

Tr. 27.

The ALJ's summary of Plaintiff's activities overstates and misrepresents the record. Though Plaintiff may be capable of driving, Plaintiff does not drive, as he does not own a car or have his license. Tr. 62, 471, 508, 825. Though he can do his own shopping, he testified he goes early in the morning to avoid interactions

ORDER - 8

1   with his neighbors.  Tr. 65.  There is no evidence Plaintiff spends "most" of his

2   days trying to get connected with social services, though in 2020, he did report

3   seeking out social services during a period of homelessness.  Tr. 432.  Plaintiff did

4   go camping for several days, however, he also testified he spent the entire time

5   crying in his tent and wanting to go home, even though he does not like home.  Tr.

6   68.

7        At the hearing Plaintiff described consistent sleep disturbances, persistent

8   fatigue and irritability that has been "happening forever," as well as disturbing

9   hallucinations where he hears, sees and talks to people.  Tr. 66-68.  He reported

10  periods of not leaving his apartment for days, not showering, not doing anything

11  and not getting off his bed.  He reported an inability to deal with people.  The

12  record reflects a history of fights with family, friends, co-workers, and neighbors,

13  and violence as the cause for his removal from high school, job loss, and criminal

14  charges.  Tr. 62, 442, 476, 701.

15       The undersigned cannot ascertain which of Plaintiff's testimony the ALJ

16  rejected based on activities of daily living.  The significance of a claimant's

17  activities depends not only on the activity, but also the nature of both the

18  impairment and the symptom reports at issue.  Plaintiff's primary claim in this case

19  is the inability to sustain competitive work.  In this case, the ALJ included no

20  restrictions in maintaining attendance or completing a normal workday and

workweek without interruptions from psychologically based symptoms.  The ALJ did not explain, for example, how jumping from a boat once, leaving the house to connect with social services, and listening to audio books, adequately constitute a specific conflict with his reported limitations, nor can the court infer such an inconsistency exists.

Defendant claims the activities listed by the ALJ are relevant as they show Plaintiff "functions well enough to lead a relatively normal life."  ECF No. 18 at 9. This conflicts with the well-settled notion that "disability [plaintiffs] should not be penalized for attempting to lead normal lives in the face of their limitations." *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998); *see Smolen v. Chater*, 80 F.3d 1273, 1284 n.7 ("The Social Security Act does not require that [plaintiffs] be utterly incapacitated to be eligible for benefits, and many home activities may not be easily transferable to a work environment where it might be impossible to rest periodically or take medication."). "The mere fact that a plaintiff has carried on with certain daily activities, such as grocery shopping, driving a car, or limited walking for exercise, does not in any way detract from [their] credibility[.]" *Webb v. Barnhart*, 433 F.3d 683, 688 (9th Cir. 2005) (quoting *Vertigan v. Halter*, 260 F.3d 1044, 1050 (9th Cri. 2001).

Defendant accurately notes that the Ninth Circuit in *Ahearn v. Saul* concluded that substantial evidence existed to discount a claimant's asserted

mental-health limitations, based on his ability to "play video games and watch television for sustained periods, to use a library computer a few times a week for two hours at a time . . . , to use public transportation, to shop at stores, to perform personal care, to prepare meals, to socialize with friends, and to perform household chores." 988 F.3d 1111, 1117 (9th Cir. 2021). The record in this case, however, is more akin to that in *Trevizo v. Berryhill*, where the ALJ's failure to make adequate findings as to how any of the activities related to the claimed limitations was significant because "many home activities are not easily transferable to what may be the more grueling environment of the workplace, where it might be impossible to periodically rest or take medication." 871 F.3d 664, 682 (9th Cir. 2017) (internal quotation marks and citation omitted).

Absent further explanation from the ALJ, reliance on Plaintiff's activities of daily living does not constitute a specific, clear and convincing reason for discounting Plaintiff's symptom claims. *See, e.g.*, *Dickinson v. Saul*, No. 3:18-CV-00162-CWD, 2019 WL 3837652, at *9 (D. Idaho Aug. 13, 2019) (ALJ's conclusion that claimant could perform light work because she could handle a checkbook, cook, walk for exercise twice a week, and care for herself, was insufficient because ALJ did not explain how the activities, "which are not performed on a sustained basis," involved the same tasks required in a work setting).

### 4. *Improvement with Treatment*

The ALJ also found that Plaintiff's mental health symptoms were "generally well controlled with medication and did not require significant medication changes or adjustments in dosages." Tr. 26. The ALJ's finding paints a picture of generally stable level of mental function, though the record shows Plaintiff continued to experience mental health symptoms even though his symptoms also showed improvement with treatment. The ALJ does not acknowledge the episodic nature of bipolar disorder and the continuing nature of Plaintiff's symptoms. For example, the ALJ cites a progress note from February 24, 2021, which indicated that in a prior evaluation on February 1, 2021, Plaintiff had reported sleeping better with a new medication. However, the same progress note reflects that on February 24, 2021, Plaintiff reported sleeping only four hours a night, poor appetite, hearing and seeing things, feeling angry, inability to fall asleep, feeling restless, and poor motivation. *See* Tr. 26 (citing Tr. 455-56). Other progress notes document improved sleep with medication, but at the same time continued sleep variability, episodes of seeing figures, hearing a crying baby, feeling like someone is watching him, isolation, and anxiety. *See* Tr. 758-63. The record demonstrates that, consistent with the nature of bipolar disorder, Plaintiff's symptoms persist, and although improvement is documented at times, Plaintiff continues to struggle with the impairments imposed by his mental illness both during periods of non-

compliance and even while on medication.  *See generally Regennitter v. Comm'r Soc. Sec. Admin.*, 166 F.3d 1294, 1299-1300 (9th Cir. 1999) ("[W]e have particularly criticized the use of a lack of treatment to reject mental complaints both because mental illness is notoriously underreported and because 'it is a questionable practice to chastise one with a mental impairment for the exercise of poor judgment in seeking rehabilitation.' ").  Though improvement with treatment is a very common reason for an ALJ to reject symptom claims, it is error to select facts from the record that support the non-disability decision while ignoring others to paint an inaccurate picture of the record as a whole.  *See Attmore v. Colvin*, 827 F.3d 872, 877-79 (9th Cir. 2016) (ALJ erred by finding improvement where claimant continued to have functional impairments and improvement was not sustained).  While certain symptoms improved at times, other symptoms appear to have persisted throughout the entire period.  In this context, the Court concludes that the ALJ's finding of improvement with treatment is not supported by substantial evidence.

### 5. Inconsistency with Objective Medical Evidence

Finally, the ALJ found that Plaintiff had "generally unremarkable and rather unexceptional" mental status exams.  Tr. 26.  The same nineteen records cited by the ALJ in support of this finding also indicate that Plaintiff had impaired concentration (Tr. 435, 479), anxious and/or depressed mood (Tr. 454, 481, 497-

500, 629, 633, 693, 732, 799), poor insight (Tr. 454), hallucinations (Tr. 456-57, 476, 481, 501, 629, 746, 800), anger (Tr. 456), disrupted/poor sleep (Tr. 454, 457, 476, 479, 497, 499-500, 522), restlessness (Tr. 456, 500, 640, 633), persistent irritability (Tr. 456, 476, 479), rage (Tr. 476, 805), poor motivation (Tr. 456, 476, 500), tendency to isolate (Tr. 476, 479), paranoia (Tr. 477, 498, 799), loss of interest (Tr. 479, 799), poor memory (Tr. 497, 663), and poor insight (Tr. 663, 693, 797). These observations are not unremarkable and cannot be reconciled with the ALJ's finding characterizing them as "generally unremarkable." The ALJ erred in cherry-picking the normal findings from a record that also documents significant abnormal findings, without adequately explaining why the abnormal findings did not corroborate Plaintiff's allegations of disabling mental limitations. *See Gallant v. Heckler*, 753 F.2d 1450, 1455-56 (9th Cir. 1984) (explaining that an ALJ "cannot reach a conclusion first, and then attempt to justify it by ignoring competent evidence in the record that suggests an opposite result").

Even if the Court were to assume that the ALJ's description of Plaintiff's mental status exams qualified as a clear and convincing reason supported by substantial evidence, this reason is inadequate as the lack of supporting objective evidence cannot serve as the sole basis on which to discount Plaintiff's symptom claims. *See Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001).

The Court does not adopt the recommended finding of harmless error as to

the ALJ's reasons for discounting Plaintiff's symptom claims. Because the ALJ failed to provide clear and convincing reasons, the harmless error analysis is unnecessary, and remand is required.

**B. Medical Opinions**

Plaintiff objects to the Report and Recommendation's finding affirming the ALJ's analysis of the medical opinion evidence from psychologists, David Morgan, Ph.D., Janis Lewis, Ph.D., and Nicole Martinez, Pys.D.  ECF No. 16 at 2-6.  Although remand is justified based on the ALJ's analysis of Plaintiff's symptom claims, the Court briefly addresses notable errors in the analysis of the opinions of Dr. Morgan and Dr. Martinez to inform the proceedings on remand.

The ALJ formulated Plaintiff's RFC based on the opinions of the state agency reviewing consultants and the testifying expert, Dr. Martinez.  There is no opinion of a treating source or a source who examined Plaintiff more than once. There are just two opinions of evaluating sources, which occurred just after the date of onset (Dr. Morgan) and four years prior to the date of onset (Erwin Darlington, PhD).

*1.  Dr. Morgan*

Dr. Morgan assessed moderate limitations in 11 work activities, including moderate limitations in (1) maintaining attendance and (2) completing a normal workday and workweek without interruptions from psychologically based

symptoms.  Notably, the agency reviewing psychologists, whom the ALJ found persuasive, also found Plaintiff moderately limited in his ability to perform a normal workday and workweek without interruptions from psychologically based symptoms.  Tr 113, 136.  The ALJ's RFC limiting Plaintiff to work consisting of simple, routine tasks not involving fast-paced production and occasional contact with the public does not account for these moderate limitations.  *See Harrell v. Kijakazi*, No. 1:20-cv-00614-GSA, 2021 WL 4429416, at *6 (E.D. Cal. 2021) (case law "tends to favor the view that a restriction to simple/routine tasks with limited public contact does not account for the moderate limitations Dr. Stafford identified in ... maintaining regular attendance[ ] and completing a normal workweek without interruption") (collecting cases).  The ALJ adopted certain moderate functional limitations in the areas of interacting with others, concentrating, persisting or maintaining pace, and adapting oneself.  Tr. 22.  Thus, it appears the ALJ implicitly accepted some of the moderate limitations assessed by Dr. Morgan, while rejecting others.

The ALJ's failure to explain the persuasiveness of Dr. Morgan's opinion regarding attendance and completing a normal workday and workweek, to a degree that would allow this Court to engage in meaningful review, was error.  *See Brown-Hunter v. Colvin*, 806 F.3d 487, 492 (9th Cir. 2015) (a court "cannot substitute [its] conclusions for the ALJ's, or speculate as to the grounds for the

1  ALJ's conclusions. Although the ALJ's analysis need not be extensive, the ALJ

2  must provide some reasoning in order for [the court] to meaningfully determine

3  whether the ALJ's conclusions were supported by substantial evidence."). The

4  reasons the ALJ relied on to find Dr. Morgan's observations unpersuasive do not

5  explain or support this partial rejection.

6      First, the ALJ concluded Dr. Morgan's opinion was a "one-day snapshot" of

7  Plaintiff's functioning. Tr. 29. The relationship factor does not provide a

8  persuasive reason to reject the opinion where the only opinions accepted as

9  persuasive were by reviewing sources.

10      Second, the ALJ found Dr. Morgan's opinion was inconsistent with the

11 longitudinal record, which the ALJ found showed only "mild to moderate

12 findings." Tr. 29. As no specific records were cited, it is unclear how moderate

13 findings are inconsistent with moderate limitations. Moreover, as explained above,

14 medical records the ALJ considered "unremarkable," were the opposite.

15      Finally, the ALJ found Dr. Morgan's assessment inconsistent with Dr.

16 Morgan's own findings and observation that Plaintiff's symptoms were not

17 consistent with a psychotic disorder or mania. *Id*. Dr. Morgan's more detailed

18 explanation of his diagnosis lends support to Dr. Morgan's opinion. *See* Tr. 51

19 (Dr. Martinez's testimony noting that Dr. Morgan "goes into a lot of detail"). Dr.

20 Morgan diagnosed recurrent major depressive disorder marked with symptoms of

moderate severity and daily frequency consisting of "depressed mood, anhedonia, lack of sleep, fatigue, agitation, feelings of worthlessness, and poor concentration." Tr. 482. The ALJ failed to explain how the moderate form of depression (without a co-occurring psychiatric disorder) is inconsistent with the moderate limitations assessed, including the moderate inability to persist in a normal workday and workweek.

The inadequately explained partial rejection of Dr. Morgan's opinion requires remand.

### 2. Nicole Martinez, Psy.D.

The ALJ's decision relied upon the testimony of the testifying psychological expert, Dr. Martinez. In providing her opinion, Dr. Martinez explained at the outset that she had "two questions." Tr. 52. Importantly, she speculated that Plaintiff's non-traditional bipolar and depression symptoms "sound like" narcolepsy II with cataplexy, a diagnosis not contained in the current record. As she tried to explain, she was cut off by the ALJ:

> The reason I was trying to keep out that there's some discussion between providers what to look the reports because it, the other reports or some of these had for someone with bipolar can report those because they're not, they are not consistently reported on an ongoing basis for also the way that they align. The one I would recommend, but these also one of the doctors in evaluation at 2F actually goes into a lot of detail noting why these are not, and I would agree, not traditional. So I have something else but also during the times that they align up and are reported they actually very much sound like narcolepsy II with cataplexy. Individuals actually have spastic, any time of day actually when an individual has narcolepsy type II with cataplexy. As

they are fatigued and they actually have a sensation of –

Tr. 51.  Upon further questioning by Mr. Hatfield about Plaintiff's lack of sleep, memory issues, and whether Plaintiff's symptoms wax and wane-- critical issues in this case – Dr. Martinez could not answer the question.  Tr. 55.  Instead, she testified that "[o]n long-term in terms of that I had noted that I actually think he should have an evaluation for the sleep disorder, I think that there isn't a co-occurring issue with sleep."[2]  Tr. 55.  When asked whether lack of sleep would impact Plaintiff's functioning the following day, Dr. Martinez responded in the affirmative.  Tr. 55.  When asked about Plaintiff's auditory and visual disturbances, Dr. Martinez testified, "[w]ell again[,] I think that he needs to have a sleep evaluation, but . . . that impairing his ability to function is not established in the . . . objective record."  Tr. 56.  When questioned about the combined impact of poor insight and judgment, during periods of poor sleep and racing thoughts, Dr. Martinez responded:

> Well I think that when I was talking about the multiple factors coalescing I think that there is the factors of poor sleep, kind of effused, sometimes there is some things thinking there's - that's why I'm talking about coalescing of

[2] Given that Dr. Martinez believed Plaintiff's symptoms were consistent with narcolepsy II with cataplexy and warranted a sleep evaluation, her statement that there "there *isn't* a co-occurring issue with sleep" is perhaps a transcription error.  Tr. 55 (emphasis added).  In any event, the statement merely compounds the already disjointed testimony.

ORDER - 19

multiple factors that come together and coalesce any time.  So it's not only, it's multiple factors corning together at different times throughout the record when we look at reports suggesting an objective reporting and the narrative during those times that line of with those notes.

Tr. 57.  Mr. Hatfield responded: "I don't know if I follow that but okay." Tr.  58.

The hearing ended shortly thereafter without clarification.

Dr. Martinez did not testify regarding the key issues in this case because she suspected Plaintiff has an undiagnosed medical impairment, narcolepsy II with cataplexy, and when asked about the related symptoms, her testimony was non-responsive and ambiguous.  Given the ambiguity in her testimony as to key issues, Dr. Martinez's opinion cannot constitute substantial evidence necessary to support the ALJ's decision.  Plaintiff is entitled to remand on this issue.

Accordingly, on remand the ALJ shall either procure medical source statements from Plaintiff's treating physicians or a consultative examination with a specialist to further develop the record concerning Plaintiff's allegations of sleep disturbance, daytime fatigue, and auditory and visual disturbances, and the extent of limitations imposed in combination with all other impairments and symptoms on Plaintiff's ability to perform work-related activities on a daily and sustained basis. The ALJ shall consider whether the matter warrants an additional separate consultative evaluation of Plaintiff's sleep, including a medical request for an overnight sleep study.  *See* 20 C.F.R. §§ 404.1519a, 416.919a (consultative examinations may be ordered to secure needed medical evidence, such as clinical

findings, laboratory tests, a diagnosis or prognosis, when the evidence is inconsistent or insufficient to support a decision).

**C. Additional Objections**

Plaintiff also objects to the Report and Recommendation's conclusion regarding steps three and five. ECF No. 16 at 6-8. The Court declines to address Plaintiff's remaining objections as the entire sequential evaluation must be reconsidered on remand and is dependent on a proper evaluation of the symptom claims and medical evidence.

**D. Remedy**

Plaintiff seeks to remand for payment of benefits or alternatively for remand of this case to the Commissioner for further proceedings. ECF No. 16 at 11. There are ambiguities in the record and outstanding issues the ALJ must resolve, thus remand for further proceedings is appropriate and required. *See Dominguez v. Colvin*, 808 F.3d 403, 407-08 (9th Cir. 2015). The Court remands this case for further proceedings consistent with this opinion and the following instructions.

On remand, the ALJ shall:

1.      Either procure medical source statements from Plaintiff's treating physicians or a consultative examination with a specialist to further develop the record concerning Plaintiff's allegations of sleep disturbance, daytime fatigue, and auditory and visual disturbances, and the extent of limitations imposed in

combination with all other impairments and symptoms;

2.     Consider whether the matter warrants an additional separate consultative evaluation of Plaintiff's sleep, including a medical request for an overnight sleep study;

3.     Update the medical record and offer Plaintiff a new hearing;

4.     Reassess all medical opinion evidence and reperform the sequential analysis with the assistance of medical expert testimony and vocational expert testimony; and

5.     Issue a new decision, taking into consideration Plaintiff's symptom claims and any other evidence or testimony relevant to Plaintiff's disability claims.

Accordingly, **IT IS ORDERED**:

1. Plaintiff's objections to the Report and Recommendation, **ECF No. 16**, are **OVERRULED IN PART and SUSTAINED IN PART**.

2. The Report and Recommendation, **ECF No. 15**, is **ADOPTED in part** and **MODIFIED in part**.

3. Plaintiff's Motion for Summary Judgment, **ECF No. 7**, is **GRANTED**. The Commissioner's decision is **REVERSED,** and this matter is **REMANDED** for further administrative proceedings pursuant to sentence four of 42 U.S.C. § 405(g).

3. Defendant's Motion for Summary Judgment, **ECF No. 12**, is **DENIED**.

4. Upon proper presentation, the Court will consider Plaintiff's application for fees and expenses under the Equal Access to Justice Act, 28 U.S.C. § 2412(d).

The District Court Executive is directed to enter this Order, **ENTER JUDGMENT** in favor of Plaintiff, forward copies to counsel and Magistrate Judge Ekstrom, and **CLOSE THE FILE**.

DATED January 21, 2026.

_s/Robert H. Whaley_
ROBERT H. WHALEY
Senior United States District Judge